IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE THE APPLICATION OF MASO CAPITAL INVESTMENTS LIMITED and ALPINE PARTNERS (BVI), L.P., | Civil Action No. 25-1169-GBW |

## MEMORANDUM ORDER

On May 25, 2022, Maso Capital Investments Limited and Clifford Cheah King Mun filed an Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding ("Original Application"). *In re King*, 22-mc-00243-MN-JLH, D.I. 1 (D. Del. May 25, 2022). After reviewing the record and applying the relevant law, Magistrate Judge Jennifer Hall ("Judge Hall")[1] entered a Memorandum Order denying the Original Application. *In re Mun*, No. 22-MC-243-MN-JLH, 2023 WL 7074016 (D. Del. Oct. 26, 2023). In her Memorandum Order, Judge Hall acknowledged ambiguity regarding whether the Bermuda Court (the Court in the underlying matter) even permitted discovery from third parties. *Id.* at *5. Notwithstanding, however, Judge Hall found that the third-party discovery sought in the Original Application was broader in scope than the discovery permitted between the actual parties in Bermuda, where the latter was deliberately limited by the Bermuda Court. Furthermore, Judge Hall explained that it would defy credulity to allow the third-party discovery to be broader in scope than the deliberately limited discovery permitted between the parties. *Id.*

---

[1] Judge Hall has since been appointed, confirmed and serving as a United States District Judge.

On November 5, 2024, the Bermuda Court clarified its previous ambiguity, holding that third party discovery is permitted. *See* D.I. 6 at 2. Accordingly, on September 19, 2025, Maso Capital Investments Limited and Alpine Partners (BVI), L.P. ("Petitioners") filed a renewed Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding ("Renewed Application"). D.I. 4. The Renewed Application has been fully briefed, including by Respondent Evercore Inc. ("Respondent") and Intervenor Jardine Strategic Limited ("Intervenor"). D.I. 4; D.I. 32; D.I. 34; D.I. 38.

For the reasons set forth below, the Court denies Petitioners' Renewed Application. In summary, that the Bermuda Court has clarified that discovery from third parties is permitted does not alleviate that (1) the Renewed Application yet seeks discovery from third parties that appears to be broader in scope than the deliberately limited scope of discovery permitted between the actual parties in Bermuda, and (2) it would defy credulity to allow third party discovery to be broader in scope than the deliberately limited discovery between the parties.

I. **BACKGROUND**

The Court, relying on Judge Hall's previous Memorandum Order, summarizes the relevant background.

As stated above, the Original Application was filed on May 25, 2022. That Application sought "documents and testimony purportedly for use in a shareholder appraisal proceeding pending in the Supreme Court of Bermuda, in which Petitioners seek a determination of the fair value of their shares in Jardine Strategic Holdings Limited ('Jardine Strategic' or the 'Company'), a Bermuda company taken private through an acquisition by its majority shareholder Jardine Matheson Holdings Limited." *In re Mun*, 2023 WL 7074016, at *1.

"Evercore Partners International LLP (aka 'Evercore U.K.'), a subsidiary of Respondent Evercore Inc., served as a financial advisor to the Transaction Committee of Jardine Strategic's

2

Board of Directors and provided an opinion on the terms of the acquisition." *Id.* "In the [Original] Application, Petitioners [sought] to issue a subpoena to Respondent Evercore Inc. for essentially all documents possessed by Evercore U.K. having any relation to Jardine Strategic." *Id.*

"The record before [Judge Hall] reflect[ed] that the Bermuda Court ha[d] expended significant resources considering and ruling on the appropriate scope of discovery for the appraisal proceeding pending before it." *Id.* "The plaintiff shareholders in the appraisal proceeding (which include Petitioners [for the Original Application]) submitted to the Bermuda Court a draft case management order (called a 'Directions Order') that would have authorized a list of proposed discovery requests, falling into 38 categories, and also would have authorized 'general discovery' of all documents relevant to the determination of the fair value of the shares of the Company." *Id.*

"The Company opposed the shareholders' proposed Directions Order and instead proposed, among other things, that (1) the Company be ordered to produce Evercore U.K.'s valuation opinion and the documents supplied to Evercore U.K. by the Company in connection with the valuation opinion and (2) that the scope of further discovery be directed by the parties' respective valuation experts, who would be allowed to make 'reasonable written requests' for information for the purpose of preparing their expert reports." *Id.* at *2.

"After receiving the competing proposals, the Bermuda Court held a three-day hearing to determine the appropriate scope and process for discovery in its proceeding." *Id.* "At the hearing, Chief Justice Hargun asked counsel for the plaintiff shareholders whether they were 'trying to discover whether there is any wrongdoing and the like in the hope that something might turn up.'" *Id.* (citation omitted). "The shareholders' counsel replied, 'No, no, my Lord, it's not that, . . . I should like to make clear that apart from the fact that there has been a massive spike in the Jardine Matheson share price, I am not alleging wrongdoing, and I think—I tried to be very clear in that—

3

this is not a fishing expedition to see whether the Keswick family have been up to no good. I'm not alleging that for one second.'" *Id.* (citation omitted).

"The Bermuda Court ultimately issued a detailed Directions Order, which outlined the scope and procedures for discovery in the appraisal proceeding, and a 36-page opinion (the 'Directions Judgment'), which set forth the Bermuda Court's reasoning." *Id.* "In the Directions Judgment, Chief Justice Hargun explained that he was rejecting the plaintiff shareholders' broad approach to discovery." *Id.* "After outlining the parties' views and explicating the applicable case law, the Chief Justice emphasized the fact that the plaintiffs were not alleging any wrongdoing." *Id.* "And he went on to explain that 'the extent of discovery and implied level of document and data review [proposed by the plaintiff shareholders] is more similar to the scope of document review and analysis which [we] would expect for a forensic accounting investigation in which there were credible allegations of fraud or accounting misstatements at multiple subsidiary levels within the corporate hierarchy.'" *Id.* (citation omitted). "He also expressed concern that the discovery process in appraisal proceedings is 'capable of abuse by the dissenting shareholders.'" *Id.* (citation omitted). "After describing the plaintiff shareholders' proposed discovery requests, he explained that 'large parts of [those requests] . . . are overly broad, unfocused and will produce a massive amount of documentation . . . with little or no relevance to the valuation exercise required to be carried out.'" *Id.* (citation omitted). "He accordingly found that 'the information sought by the Dissenting Shareholders is highly unlikely to assist a valuer in appraising the value of the Company of this nature in the circumstances.'" *Id.* (citation omitted). "Chief Justice Hargun ultimately concluded that the 'appropriate approach, in the exceptional circumstances of this case, is that as suggested by the Company.'" *Id.* (citation omitted).

"Consistent with the Directions Judgment, the Directions Order entered by the Bermuda Court required the Company to produce 'the documents supplied to Evercore Partners LLP [(Evercore U.K.)] for its valuation opinion dated 7 March 2021 ([']the Valuation Opinion[']), together with the Valuation Opinion'—which represented only a subset of the Evercore-related documents requested by the plaintiff shareholders." *Id.* at *3 (citation omitted). "The Directions Order further directed the parties to engage in an expert-led process for additional discovery, whereby each side's valuation expert could make written requests for relevant information for the purpose of preparing their reports." *Id.*

"Pursuant to the process ordered by the Bermuda Court, the Company produced Evercore U.K.'s valuation opinion and the materials provided by Jardine Strategic to Evercore U.K. for that opinion." *Id.* "The plaintiff shareholders' valuation expert subsequently made two requests for categories of additional documents, including documents concerning Evercore U.K." *Id.* "The record before [Judge Hall] reflect[ed] that the Company [had] produced or [was] in the process of producing documents responsive to requests from the plaintiffs' expert; the record further reflect[ed] that 'the Company liaised with Evercore UK to ensure that copies of documents that were in the possession of Evercore UK, but within the power of the Company, were disclosed to ensure that all documents in the possession, custody or power of the Company responsive to the [expert's] Requests relating to Evercore UK were disclosed.'" *Id.* (citation omitted).

"After the plaintiff shareholders' expert made his second set of requests, but before the Company responded, Petitioners filed their [Original] § 1782 Application in this Court." *Id.* "The [Original] Application [sought] authorization to issue [a] proposed subpoena . . . to Evercore Inc., the U.S. parent of Evercore U.K." *Id.* "The proposed subpoena [was] very broad: it [sought]

5

(among other things) production of essentially all documents relating to the transaction underlying the Bermuda Court's appraisal proceeding." *Id.*

After carefully reviewing the record and the applicable law, Judge Hall denied Petitioners' Original Application. She assumed "without deciding that the § 1782 statutory requirements [were] satisfied, but" exercised her "discretion to deny the [Original] Application." *Id.* at *4.

## II. LEGAL STANDARD

"Section 1782 of Title 28 authorizes a district court, upon the application of any interested person, to order a person residing or found in this district to give testimony or produce documents for use in a proceeding in a foreign or international tribunal." *In re King Mun.*, 2023 U.S. Dist. LEXIS 192250, at *10 (citing 28 U.S.C. § 1782(a)) (cleaned up). If these "statutory conditions are satisfied, the court then determines in its discretion whether the requested discovery should be allowed, taking into consideration certain factors identified by the Supreme Court in *Intel*." *Id.* at *10-11 (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 263-64 (2004)).

The *Intel* factors are "(1) whether the evidence sought is within the foreign tribunal's jurisdictional reach, and thus accessible absent section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States; (4) whether the subpoena contains unduly intrusive or burdensome requests." *Id.* at *11 (citation omitted).

## III. DISCUSSION

The Court holds that, on balance, the *Intel* factors do not support Petitioners' Renewed Application and, therefore, denies the Renewed Application.[2] Below, the Court considers Judge Hall's conclusions regarding each *Intel* factor with respect to the Original Application and examines whether, with respect to the Renewed Application, any intervening events warrant deviation from Judge Hall's well-reasoned conclusions.

As to the first *Intel* factor, Judge Hall explained:

> The first *Intel* factor asks whether the evidence sought is within the foreign tribunal's jurisdictional reach and thus obtainable without resort to § 1782. Respondent Evercore Inc. is not a party to the appraisal proceeding. But much of the evidence sought is obtainable—and indeed has already been obtained—in the Bermuda proceeding. Regardless, I'll assume that Petitioners seek additional evidence beyond the Bermuda Court's jurisdictional reach, and I'll assume that this factor therefore favors Petitioners.

*In re Mun*, 2023 WL 7074016, at *4 (citations and footnote omitted). The Court agrees with Judge Hall's conclusion and no relevant intervening events have occurred that compel deviation. Thus, the first *Intel* factor weighs in favor of Petitioners' Renewed Application.

With respect to the second *Intel* factor, Judge Hall explained:

> The second *Intel* factor also favors Petitioners. It considers the nature of the foreign litigation, the character of the proceedings already underway, and the foreign country's receptivity to U.S. federal court assistance. According to the Third Circuit, the inquiry here is not whether particular evidence would be admissible in the foreign court, but instead more generally whether the foreign court is receptive to U.S. federal court assistance. While I have doubts that the Bermuda Court would authorize or approve of the discovery requested by the [Original] Application, I can't say on this record that the Bermuda Court would be unreceptive to judicial assistance. Accordingly, I conclude that this factor favors Petitioners.

---

[2] The Court, like Judge Hall, assumes without deciding that the statutory requirements of § 1782 are satisfied.

*Id.* (citations and footnote omitted). The Court agrees with Judge Hall's conclusion and no relevant intervening events have occurred that compel deviation. Thus, the second *Intel* factor weighs in favor of Petitioners' Renewed Application.

With respect to the third *Intel* factor, Judge Hall explained:

> The third *Intel* factor strongly favors Respondents. It asks whether the § 1782 request conceals an attempt to circumvent the foreign tribunal's proof-gathering restrictions or other policies. Under the particular circumstances here, I conclude that the [Original] Application represents an attempt to circumvent Chief Justice Hargun's Directions Order and Directions Judgment. Chief Justice Hargun held a three-day hearing on the appropriate scope of discovery. He issued a lengthy Directions Order setting forth how discovery would be conducted and the scope of discovery that would be permitted. The Directions Order specifically describes, among other things, the procedures for the parties' experts to request information needed to form their opinions on valuation. Accompanying his Directions Order was a 36-page Directions Judgment explaining why he concluded that an expert-led discovery process was proportional to the needs of the appraisal case pending before him, which did not include any allegations of fraud.
>
> To the extent that Petitioners' [Original] Application requests documents also in the possession or control of the Company that are not already required to be produced in Bermuda, those requests have already been effectively rejected by the Bermuda Court by operation of the Directions Order, which limited the scope of discovery available from the Company.
>
> Petitioners contend that the Directions Order only applies to the parties to the appraisal proceeding, so it shouldn't be viewed as the Bermuda Court rejecting Petitioners' attempt to obtain discovery from non-party Evercore, including its internal documents and its own communications with other third parties (*i.e.*, not the Company). But even if that were correct—and the Court has its doubts—Petitioners haven't persuasively explained why the result here should be different. The Bermuda Court considered broader discovery requests proposed by the plaintiff shareholders and rejected them on the grounds that (1) they sought information not relevant to the case, and (2) broader discovery was not proportionate under the particular circumstances of the case. Given the Bermuda Court's rationale for rejecting broader discovery from a *party* to the appraisal proceeding, it defies credulity to argue that the Bermuda Court would have concluded that broader discovery from a *non-party* was relevant and proportional to the needs of the case. Thus, while the Directions Order may not have expressly precluded Petitioners from seeking third-party discovery via § 1782, I nevertheless find on this record that the [Original] Application is, at the very least, inconsistent with Chief Justice Hargun's orders and, in fact, conceals an attempt to circumvent his orders.

8

*Id.* at \*4-5 (citation and footnote omitted).

As intimated above, the salient difference between the circumstances of the Original Application and the circumstances of the Renewed Application is that, since Judge Hall's Memorandum Order, the Bermuda Court held that Chief Judge Hargun's Directions Order was "not directed at restricting . . . subpoenas against third parties." *See* D.I. 6 at 2 (citation omitted). In the same Order, the Bermuda Court "upheld the relevance of the non-party discovery based on submissions from Mr. Mark Bezant, Petitioners' expert, making clear that he required the documents to perform his analysis, and that there was no speculation or fishing involved in the requests.'" *See* D.I. 6 at 3 (cleaned up).

However, Judge Hall already concluded that, notwithstanding whether the Directions Order restricted the issuance of subpoenas against third parties, the discovery sought by Petitioners' Original Application was "inconsistent with Chief Justice Hargun's orders and, in fact, conceal[ed] an attempt to circumvent his orders" because the third-party discovery requested was broader in scope than the discovery permitted between the parties. *In re King Mun.*, 2023 U.S. Dist. LEXIS 192250, at \*5. Having reviewed the record, the parties' briefs, and Judge Hall's Memorandum Order, the Court agrees with Judge Hall's conclusion regarding the Original Application. Furthermore, the Court sees no reason to deviate from the logic of Judge Hall's conclusion with respect to the Renewed Application.

Petitioners raise four grounds to support their contention that they are not attempting to circumvent the permissible scope of discovery set forth by the Bermuda Court. For the reasons discussed below, each of these grounds is unavailing.[3] *First*, Petitioners rely on the fact that, since

---

[3] Petitioners present these arguments in multiple sections of their brief, including their sections regarding the third and fourth *Intel* factors. For convenience, the Court restricts its discussion of

Judge Hall's Memorandum Order, the Bermuda Court clarified that third party discovery is permitted. *See, e.g.*, D.I. 38 at 10 ("First, to argue undue burden, Respondent again relies on the Prior Order's finding that requests documents in control of the Company and not subject to discovery under the Directions Order were overbroad. But since the Prior Order, the Bermuda Court clarified that the Directions Order does not limit third-party discovery." (citation omitted)). However, as discussed above, that third party discovery is permitted does not mean that the requested third-party discovery is appropriately narrow in scope.

*Second*, Petitioners contend that "the documents sought" by the second Application are "specifically tailored." D.I. 6 at 19-20. This contention, however, lacks support. Petitioners originally requested the Bermuda Court to require the Company to produce any "Communications with and Documents produced by, provided to or received from [Evercore UK] or its affiliates." D.I. 35-2, Ex. 4, App. 2 § 5.1. However, the Bermuda Court appears to have denied this request, along with other requests, as "overly broad, unfocused," and "disproportionate to the [aim of arriving at a] fair valuation of the shares [of] the Company." *See* D.I. 8-8 ¶ 79. With respect to the Renewed Application, Petitioners assert that their renewed discovery requests fall "into three categories: (i) Evercore's internal discussions and analysis related to the preparation of the Evercore Opinion; (ii) information Evercore received from subsidiaries and affiliates of the Company; and (iii) information exchanged between Evercore and the Buyer and its representatives." D.I. 6 at 3. However, the repackaged discovery requested in the Renewed

---

whether Petitioners are attempting to circumvent the narrow scope of discovery set forth by the Bermuda Court to the Court's discussion of the third *Intel* factor. However, the same analysis applies to the fourth *Intel* factor.

Application, even if time bound,[4] appears to be at least as broad in scope, if not broader, than the discovery that the Bermuda Court expressly considered and decided against. Thus, the Court fails to see how the repackaged discovery is, as Petitioners claim, "specifically tailored."

*Third*, Petitioners contend that they have adhered to the process to obtain discovery that was set forth by the Bermuda Court, in that Petitioners' expert explained "why he needs the" requested discovery, and that the Bermuda Court previously granted third party discovery where the expert had explained the basis for his or her request. D.I. 38 at 10. However, that Petitioners in their renewed Application purportedly adhered to the procedures provided by the Bermuda Court for requesting third party discovery does not mean that the requested discovery is sufficiently narrow in scope.[5]

*Fourth*, Petitioners emphasize that the Bermuda Court explained that it is "important that the Court should receive as informed and accurate valuations from the experts as it is possible to achieve in an appraisal case of this size and complexity." *See* D.I. 38 at 11 (citation omitted). However, that the Bermuda Court should receive informed and accurate valuations from the relevant experts does not widen the permissible scope of requested discovery expressly set forth by the Bermuda Court.[6]

For these reasons and in concert with Judge Hall's Memorandum Order, the third *Intel* factor weighs against Petitioners' Renewed Application.

---

[4] D.I. 6 at 20 (stating that "the discovery requests also are temporally limited, to cover the 5-month period during which Evercore was engaged as the financial advisor to the Transaction Committee").

[5] Petitioners could have explained the scope of the permitted third-party discovery in Bermuda. It is telling that Petitioners elected not to do so.

[6] The Court's holdings above apply to the requests for production and deposition.

With respect to the fourth *Intel* factor, Judge Hall explained:

> The fourth *Intel* factor also favors Respondents. It examines whether the requests are unduly intrusive or burdensome. The Bermuda Court has already ruled that an expert-driven discovery process was appropriate for the particular case pending before it and that broader discovery was disproportionate to the needs of the case. Even if it were appropriate for this Court to (in effect) review the Bermuda Court's ruling about the appropriate scope of discovery for its own case, I would not disagree with the Bermuda Court. On this record, I find that the [Original] Application—to the extent it requests information not already ordered to be produced in the Bermuda action—contains requests that are unduly intrusive, burdensome, and not relevant to the parties' claims in the Bermuda action, and that the [Original] Application amounts to a fishing expedition.

*In re Mun*, 2023 WL 7074016, at *5 (citations omitted). The Court agrees with Judge Hall's conclusion and otherwise relies on its own discussion above. Thus, the fourth *Intel* factor weighs against Petitioners' Renewed Application.

Having considered the *Intel* factors, the Court exercises its discretion to deny Petitioners' Renewed Application.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Maso Capital Investments Limited and Alpine Partners (BVI), L.P.'s Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding (D.I. 4). Since the Court was able to resolve the Renewed Application without oral argument, the Court denies-as-moot Jardine Strategic Limited's Request for Oral Argument (D.I. 41) and Evercore Inc.'s Request for Oral Argument (D.I. 42).

\* \* \*

WHEREFORE, at Wilmington this 30th day of January 2026, **IT IS HEREBY ORDERED** that Maso Capital Investments Limited and Alpine Partners (BVI), L.P.'s Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding

(D.I. 4) is **DENIED. IT ALSO IS HEREBY ORDERED** and that Jardine Strategic Limited's Request for Oral Argument (D.I. 41) and Evercore Inc.'s Request for Oral Argument (D.I. 42) are **DENIED-AS-MOOT**.

                                                                         GREGORY B. WILLIAMS
                                               UNITED STATES DISTRICT JUDGE